THE PEOPLE OF THE STATE OF NEW YORK, Appellant,
*v.* HYMAN JACKERSON, Respondent.

**Crimes — receiving stolen property — trial — charge — statement in charge that burglary had been established not error where fact of crime had been treated by all at trial as conceded — insufficiency of evidence to establish that sister of burglar was accomplice as matter of law — refusal to so charge proper.**

1. Upon trial of an indictment charging defendant with criminally receiving stolen property a statement by the trial judge, in his charge to the jury, that the burglary and larceny had been judicially established because two thieves had been found guilty of the crime, is an incorrect statement of the law, but does not constitute reversible error where the fact of those crimes having been committed had been treated by all concerned at the trial as established and conceded and defendant's counsel had failed to ask that the issue be submitted to the jury. It was, therefore, error for the Appellate Division to reverse a judgment of conviction on the ground that the trial judge had erred in charging that the burglary had been established.

2. Evidence that a sister of one of the thieves, terrorized by him, by his direction had awakened him at two o'clock in the morning, realizing that he planned to commit a burglary, and that the next morning she and her little brother, by his direction, and under threat by him to strike her, removed some labels from stolen goods which had been brought to the house, is insufficient to sustain a claim that she was an accomplice as matter of law with her brother in the burglary and with this defendant in receiving stolen goods. At most it was a question for the jury, and the trial judge properly refused to charge that she was an accomplice as matter of law.

*People* v. *Jackerson*, 214 App. Div. 822, reversed.

(Submitted November 28, 1927; decided January 10, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 31, 1925, which reversed a judgment of the Queens County Court rendered upon a verdict convicting the defendant of criminally receiving stolen goods and granted a new trial.

*Richard S. Newcombe, District Attorney (Thomas T. Thornton* of counsel), for appellant. The evidence amply justified the verdict and every element of the crime was established. (*People* v. *Walker,* 198 N. Y. 329.) The portion of the charge complained of did not prejudice the defendant as the commission of the burglary was not only established by the evidence but was not disputed by the defendant. (*People* v. *Walker,* 198 N. Y. 329.) The trial court properly declined to charge as a matter of law that the witnesses Katherine and George Irwin were accomplices. (*People* v. *Zucker,* 20 App. Div. 363; 154 N. Y. 770; *People* v. *Sweeney,* 213 N. Y. 37; *People* v. *Bright,* 203 N. Y. 73; *People* v. *Crossman,* 241 N. Y. 138; *People* v. *Elliott,* 155 App. Div. 486; *People* v. *McGonegal,* 136 N. Y. 62; *Bird* v. *U. S.,* 187 U. S. 118; *People* v. *Sversky,* 216 N. Y. 476; *People* v. *Deamsco,* 240 N. Y. 170; *People* v. *Dixon,* 231 N. Y. 116; *People* v. *Hooghkirk,* 96 N. Y. 149; *People* v. *Ryland,* 97 N. Y. 126; *People* v. *Everhardt,* 104 N. Y. 591; *People* v. *Elliott,* 106 N. Y. 288; *People* v. *Mayhew,* 150 N. Y. 346.)

*David Goldstein, Joseph W. Ferris* and *Meyer Glickstein* for respondent. Reversible error was committed in the trial court's removing from the consideration of the jury the question of fact as to the burglary and the theft of the goods and charging that these facts had been judicially determined. (*People* v. *Walker,* 198 N. Y. 329; *People* v. *Hartwell,* 166 N. Y. 361; *People ex rel. Briggs* v. *Hanley,* 185 App. Div. 667; *People* v. *Acerno,* 164 App. Div. 541.) The trial court committed reversible error in holding in effect and charging the jury that there was sufficient evidence from which they might find that Katherine Irwin and George Irwin were not accomplices. (*People* v. *Holden,* 127 App. Div. 758; *Perkle* v. *State,* 11 Ga. App. 98; *Burns* v. *State,* 89 Ga. 527; *People* v. *Martin,* 13 Cal. App. 96; *Ross* v. *State,* 169 Ind. 388; *Bain* v. *State,* 67 Misc. Rep. 557; *Republica* v. *McCarthy,*

2 Dall. [Penn.] 86; *Burton* v. *State*, 61 Tex. Cr. 196; *United States* v. *Villato*, 28 Fed. Cas. 377.)

CRANE, J. On the 11th day of July, 1924, in the County Court of Queens county, the defendant was found guilty of receiving stolen property in the first degree, as a second offense. The Appellate Division reversed the judgment of conviction on the law and ordered a new trial, the facts having been examined and no error found therein. In its memorandum opinion, that court held that it was error for the trial judge to charge the jury that the burglary of the Frank store in Hempstead had been established, and that the jury need not waste any time discussing the question, citing *People* v. *Walker* (198 N. Y. 329, p. 335). That case held that on the trial of an indictment for receiving stolen goods it is necessary to submit to the jury the question whether or not the goods were stolen. The fact that there is no dispute upon the evidence will not justify the court in taking this element of the crime from the jury. All rules of law, however, have their proper limitations, and one of them is expressed in this case. The court said: " Moreover, as is frequently the case, if a fact essential to the crime, although not expressly admitted, is undisputed and is treated during the trial by all concerned as established, it would not be reversible error for the court to so charge, unless, and the exception is vital, the defendant should ask to have it submitted to the jury, and in that event, even in such a case, it would be the duty of the court to submit it accordingly." The trial of this defendant comes within the exception thus stated. The parties throughout the case assumed that Frank's store in Hempstead had been burglarized and his goods stolen; the counsel for the defendant made no request that this matter be submitted to the jury.

The facts briefly are these. William Irwin and Marquis Curtis were old-time offenders. Irwin lived with his

mother and sisters at 445 One Hundred and Twenty-ninth street, Richmond Hill, Queens county, Long Island. Abraham L. Frank maintained a department store at Hempstead, Long Island. On the night of February 10, 1924, it was burglarized, and about $10,000 worth of goods taken. Irwin and Curtis were convicted of the burglary and larceny and sent to State's prison for long terms before the trial of this action. They were both in prison under sentence at the time of this trial. Marquis Curtis was brought down from prison by the district attorney and appeared as a witness against the defendant. He was cross-examined at great length by the defendant's counsel regarding the robbery and his connection with it, all upon the assumption that the robbery had taken place. The following may be taken as illustrating the attitude of the defendant's counsel:

" Q. Now, you went to Hempstead before the robbery, did you not? A. Yes, sir, I did.

" Q. And did you go there with Willie Irwin? A. I did.

" Q. About two days before the burglary, is that right? A. Yes.

" Q. Now, it was your contention on the trial of your case that the night that you went there you left them on the job, is that right? A. No, my contention was that the thing was no good at all.

" Q. Mr. Curtis, you were brought here from where? A. Auburn Prison.

" Q. You have no hopes of any reward or shortening of the term that you are now serving as a result of the evidence that you have given, is that right? A. To the contrary, it would be simply the other way."

The sister of Will Irwin, Katherine Irwin, was called as a witness for the People. She had testified against her brother on his trial. The defendant's counsel in this case not only cross-examined her regarding her testimony upon that former trial, but introduced in evidence part of the stenographer's minutes containing her testi-

mony taken upon that trial. Miss Irwin, under cross-examination, said that she had testified on the trials of both Curtis and her brother. The same line of cross-examination was followed with George Irwin, the little brother of Will Irwin, who was called as a witness for the People.

This trial having been conducted upon the assumption that Frank's store in Hempstead had been burglarized by Will Irwin and Marquis Curtis, and the district attorney and the defendant's counsel having treated such burglary as an established fact, it is not at all surprising that the trial justice should have assumed the same attitude in his charge to the jury. His statement to the jury that they need not waste any time discussing the question as to whether Frank's store was burglarized and his goods stolen, was induced by the fact that the lawyers had not raised any question regarding this element of the crime, and had taken for granted, apparently, in the conduct of the trial, that the store had been burglarized as alleged. The statements by the judge that the burglary and larceny had been judicially established because the two thieves had been found guilty of the crime, was not law, and was an incorrect statement. On the trial of an indictment for receiving stolen goods, the larceny cannot be established merely by showing that someone has been convicted of the larceny. As stated in *People* v. *Walker*, every element of the crime of receiving stolen goods, including the larceny, must be proved before the defendant can be convicted. However, this inaccuracy upon the part of the trial judge in his reasons for concluding that the burglary had been committed and for taking the question from the jury, was not error in this case, for the reason, as we have already stated, that the fact was treated during the trial by all concerned as having been established and conceded.

At the close of the charge the defendant's counsel took exception to the statement of the judge that it had

been judicially established that Frank's store was burglarized, but he failed to ask that such an issue be submitted to the jury.

For these reasons we think the Appellate Division was in error in reversing the judgment of conviction upon the ground stated.

However, it is necessary for us to consider any other question of law which might have justified the reversal.

As above stated, Curtis, one of the thieves, testified against the defendant. The judge charged that he was an accomplice whose testimony would have to be corroborated. Whether Katherine Irwin and her brother George, a young boy fourteen years of age, were accomplices, the trial judge left to the jury to decide as a question of fact. Personally, I doubt very much whether there was sufficient evidence to justify the jury in finding them to be accomplices. Whether this be so, or not, the judge was cautious enough to leave it to the jury as a question of fact. No exception was taken to this charge as applicable to Katherine Irwin. Counsel did request the court to charge that she was an accomplice as matter of law, and to his refusal to so charge, took an exception. What are the facts?

Katherine Irwin was a young girl twenty years of age, and so far as this record shows, of good character. She lived at home with her mother and her brothers and grandparents at Richmond Hill. Will Irwin had come home after having served a sentence in prison, and over the protest of his mother, brought Curtis, an ex-convict, with him. He terrorized the home. He was a bad man. He beat and abused his sister until she was obliged to leave home, and find refuge with the probation officer, Mrs. Leary, with whom she was living at the time of the trial. Katherine's testimony is as follows: " Well, my brother was mean to me and I stood for it. He used to beat me. Q. (On cross-examination) The one who got thirty years? A. Yes. * * * If I said that my

brother Willie was not working I would have gotten a good beating.

" Q. So you couldn't stand that any more and that is why you went to Mrs. Leary?   A. I stood it long enough."

On the night of the burglary, February tenth, this young girl was told by her brother to awaken him and his friends, sleeping in the house, at two o'clock in the morning.   This she did, realizing that they planned to burglarize some store.   The next morning, when a large quantity of goods of all descriptions had been brought into the home by Will and his pals, she was told, together with her little brother George, to remove some of the labels.   She refused, until her brother threatened to strike her.

On the strength of this testimony, it is claimed that this young girl was an accomplice with her brother in the burglary, and with this defendant in receiving stolen goods, an accomplice as matter of law.   I do not think that such evidence even raises a question of fact as to complicity.

The generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense either as principal or accessory. (*People* v. *Richardson*, 222 N. Y. 103, p. 114.)   Could Katherine or her brother George have been convicted of being principals either in the commission of burglary, larceny, or receiving stolen goods?   The question of intent must always enter as an element of the crime.   If Katherine and her brother George acted under fear and with no intent to aid or to participate in the commission of a crime, neither would be guilty of an offense known to the law.   One is not to be deemed an accomplice merely because he has knowledge of the intended commission of a crime unless he in some way aids or incites its commission.   (*People* v. *Richardson, supra,* p. 113.)   The waking of the brother at two o'clock in the morning, knowing that he was to commit crime, would not make

Katherine an accomplice unless she was part of the conspiracy, and did it with an intention to aid and assist in the commission of the crime. At the very most these were matters for the jury, and it was left to them as a question of fact, under a very fair charge, which in this particular was not excepted to. Clearly, Katherine was not an accomplice as matter of law, and this is what counsel for the defendant insisted upon, and the only question raised by his exception, at this part of the case.

Besides this brother and sister, there was the evidence of the accomplice Curtis, above referred to.

The jury on this evidence and under the charge, might well have found that neither Katherine nor George were accomplices as matter of fact. If they were not, their evidence alone was sufficient to convict the defendant. If they were accomplices — and personally I do not see how in the most favorable light they could have been — there were other circumstances sufficient to justify the jury in finding the corroboration tending to connect the defendant with the commission of the crime. Katherine testified that on the morning of the eleventh, between eight and nine o'clock, her brother telephoned to the home of the defendant, and that in about half an hour thereafter, Jackerson came to their house and bought the stolen property, taking some of it away with him. The telephone number for the witness' home and the number for the defendant's phone at his house were not only given by the witness, but also furnished by the officials of the telephone company, who produced their records and slips, showing that at the time stated there was a connection made between the two numbers on a call from the witness' home. More than this, the defendant, who did not take the stand himself, attempted to prove an alibi, which the jury were justified in viewing with suspicion. His brother testified that on February 11, 1924, the defendant was with him while closing a real estate deal. The transaction was with Benjamin Jacker-

son, the brother. All the papers in the transaction were in the name of Benjamin Jackerson. The defendant apparently had no connection whatever with the sale, except as appears from the oral testimony of the brother. His testimony was considerably weakened on cross-examination.

As before stated, the Appellate Division, on a review of all the evidence, found it sufficient to justify the conviction of the defendant as guilty beyond a reasonable doubt. Its order states that the facts had been examined and no error found therein. The reversal was on the law. We find no error of law warranting the reversal which leads to an affirmance of the judgment of conviction, and a reversal of the judgment of the Appellate Division. The judgment of the Appellate Division should be reversed, and the judgment of conviction affirmed.

POUND, ANDREWS and O'BRIEN, JJ., concur; CARDOZO, Ch. J., and LEHMAN, J., dissent; KELLOGG, J., not sitting.

Judgment accordingly.