THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK J. McCARTHY and THOMAS ROBINSON, Appellants.

(Argued February 18, 1929; decided March 19, 1929.)

*Alexander I. Rorke* for appellants. The Court of Special Sessions acquired no jurisdiction either of the subject-matter or of the defendants-appellants. (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383; *People* v. *Magrino,* 168 N. Y. Supp. 354; *People ex rel. Lawton* v. *Snell,* 216 N. Y. 527; *People ex rel. Lotz* v. *Norton,* 76 Hun, 7; *People* v. *Dillon,* 197 N. Y. 254; *People ex rel. Phillips* v. *Hanley,* 64 App. Div. 150.) The alleged conspiracy was not established and the finding of guilty was contrary to the law and evidence. (*People* v. *Razezics,* 206 N. Y. 249;

*People* v. *Bennett,* 49 N. Y. 137; *People* v. *Fitzgerald,* 156 N. Y. 253; *People* v. *Suffolk Contracting Co.,* 171 App. Div. 645.)

*Joab H. Banton, District Attorney* (*Michael J. Driscoll* of counsel), for respondent. The successive orders granting permission to defendants to appeal to this court and the successive orders granting the motion for a certificate of reasonable doubt were error and hence the appeal should be dismissed. (*People* v. *Goldberger,* 219 App. Div. 259; *People* v. *Wolf,* 247 N. Y. 189; *People* v. *Kevlon,* 247 N. Y. 191; *People* v. *Doran,* 246 N. Y. 409; *People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 197; *Hannon* v. *Siegel-Cooper Co.,* 164 N. Y. 566; *People* v. *Schmidt,* 216 N. Y. 324; *Waldo* v. *Schmidt,* 200 N. Y. 199.) The chief city magistrate had jurisdiction to conduct the examination and to hold defendants for trial in the Court of Special Sessions. (*People ex rel. Willett* v. *Quinn,* 150 App. Div. 813; *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383; *City of Buffalo* v. *Neubeck,* 209 App. Div. 391; *People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176.) The Court of Special Sessions obtained jurisdiction under the information filed by the district attorney. (*People* v. *Schmidt,* 216 N. Y. 329; *Roberts* v. *Reilly,* 116 U. S. 80; *Matter of N. Y., L. & W. R. R. Co.,* 98 N. Y. 447; *Matter of Blum,* 9 Misc. Rep. 571; *People* v. *Raport,* 193 App. Div. 135; *People* v. *Ostrander,* 144 App. Div. 860; *Dodge* v. *Cornelius,* 168 N. Y. 860; *People ex rel. Hertz* v. *Warden, etc.,* 149 App. Div. 939; *People* v. *Perrin,* 170 App. Div. 375; *People* v. *Dillon,* 197 N. Y. 254; *Hunt* v. *Hunt,* 72 N. Y. 217.) The information filed in the Court of Special Sessions is not defective. (*People* v. *Olsen,* 15 N. Y. Supp. 778; *People* v. *Miles,* 123 App. Div. 871; 192 N. Y. 541; *People* v. *Peckens,* 153 N. Y. 576; *People* v. *Van Tassel,* 156 N. Y. 565; *People* v. *Miles,* 128 App. Div. 862; *People* v. *Willis,* 34 App. Div. 203; 158 N. Y. 392; *People* v. *Colantone,* 243

N. Y. 138; *Wood* v. *Duff-Gordon*, 222 N. Y. 88.) The testimony fully established the conspiracy and the finding of guilty was not contrary to the law and the evidence. (*People* v. *Smith*, 57 Hun, 332; *People* v. *Canadian Fur Trappers Corp.*, 248 N. Y. 159; *People* v. *Jung Hing*, 212 N. Y. 393; *People* v. *De Simone*, 225 N. Y. 261; *People* v. *Laudiero*, 192 N. Y. 304.)

CRANE, J. There seems to be some misunderstanding of the practice under section 520, subdivision 3, of the Code of Criminal Procedure. This provides for an allowance of an appeal to this court in the following words: " If a judge of the court of appeals or a justice of the appellate division of the supreme court of the department in which such conviction was had certifies that a question of law is involved which ought to be reviewed by the court of appeals, then a further appeal on such question of law may be taken to the court of appeals."

Only one such application can be made. It may be made to any judge of the Appellate Division or to any judge of the Court of Appeals. The application is to the judge personally, not to the court. The judge must hear the application, if made to him. When, however, he has heard and denied the application, it is final — application cannot be made to any other judge either of the Appellate Division or of the Court of Appeals. If this were not so, it would be possible for the application to be made to all of the judges of these courts in succession. Under section 529, it is specifically provided that when one application has been made for a certificate of reasonable doubt, no other application for such certificate shall be made. The reasoning in *Carlisle* v. *Barnes* (183 N. Y. 272) in reference to applications for leave to appeal under section 191 of the Code of Civil Procedure has equal force to the applications under section 520 of the Code of Criminal Procedure.

In *People* v. *Goldsmith* (249 N. Y. 586) the applica-

tion was made in the first instance to the Appellate Division as a court. We decided that this was not a compliance with section 520. In this case an order to show cause was obtained returnable before ———— one of the justices of the Appellate Division. No justice was named. The application was not made to a justice of the Appellate Division. It was so considered by that court, which denied the motion for leave to appeal as a court, five justices sitting. (225 App. Div. 660.) Under these circumstances one of the judges of this court on application duly made, granted leave to appeal, considering, as he was justified in doing, that no previous application had been made to a justice of the Appellate Division within the meaning of section 520, subdivision 3, of the Code of Criminal Procedure.

Moreover, where an order for leave to appeal has been improperly made, the proper and the better practice is to move to vacate the order, and not to wait until the argument of the appeal to raise the point. (*Carlisle* v. *Barnes, supra.*)

I repeat, however, that the attorney for the proposed appellant may choose any one of the judges of the Appellate Division or of the Court of Appeals before whom to make his application for leave to appeal, but having made his choice, he is bound by it. He cannot again apply to any other judge.

Passing to the merits of this case, we find the information alleging a conspiracy to cheat and defraud the city of money in that the defendants, taking count of the number of truck loads of snow removed from the streets by one Joseph Dolan, as subcontractor, did falsely certify that said Joseph Dolan and his employees had removed and carried away 43 instead of 31 truck loads of snow. On the trial it was stated that the city of New York contracted with John Meehan & Sons, at forty-seven cents a cubic yard. After describing the method of checking the trucks as they were dumped at One Hundred and Thirty-fifth

street and the Harlem river, the assistant superintendent of snow removal testified that it was on the checks or reports or tickets furnished by the defendants as watchers or checkers that the contractor is paid for the removal of the snow. There was evidence by Joseph Kaszubski, an employee of the Commissioner of Accounts to check the checkers, or to watch the defendants, that the eight carts designated carried only 33, not 45 loads. There seems to be this variance between the information and the testimony, the information saying 43 and 31 loads, and giving the name of Dolan as contractor instead of Meehan. No point, however, was made of these variances on the trial, the motion made at the end of the case being based solely on the ground " that the facts shown are as consistent with innocence as they are with guilt." In a criminal case as in any other, certain facts may be conceded or variances waived. (*People* v. *Jackerson*, 247 N. Y. 36.) To this statement there are exceptions; the death of a person in murder or manslaughter cases must be proved. (Penal Law, § 1041.) I take it also that a defendant's counsel could not admit premeditation and deliberation any more than he could plead guilty to murder in the first degree in behalf of his client. These variances, therefore, not raised upon the trial, cannot be pressed now as reasons for reversal. If the attention of the Special Sessions judges or of the District Attorney had been called to these matters, the proper proof might have been supplied and the proper amendments made.

The evidence shows that One Hundred and Thirty-fifth street and the Harlem river was the place designated for dumping. Kaszubski saw no dumping at One Hundred and Thirty-fourth street. It was suggested by one of the defendants that trucks went through One Hundred and Thirty-fourth street. The fact that the defendant thus testifying stood at One Hundred and Thirty-fifth street to do his checking, and that all the trucks after two o'clock in the afternoon apparently went through

One Hundred and Thirty-fifth street according to his own checking and the testimony of Kaszubski makes, we think, these matters and this testimony one of fact. In other words, although the evidence is decidedy meager and thin, we cannot say that there was no evidence to sustain the conclusions of guilt as found by the triers of fact, the judges of Special Sessions. This court cannot review the facts or the weight of evidence.

This trial was in March of 1927. The defendants were sentenced in March of 1928. In the meantime a motion had been made by new counsel to set aside the conviction on the ground that the magistrate had held the preliminary hearings outside the district specified in section 75 of the Inferior Criminal Courts Act; and that having conducted a general investigation into the acts of the city employees in snow removal, he had no jurisdiction to hold the defendants for the Special Sessions.

The magistrate had jurisdiction to hear the charge of conspiracy, which is a misdemeanor, and to hold the defendants on sufficient evidence for trial in the Court of Special Sessions. If he held his hearings in the wrong district it was an irregularity which could have been and was waived. No objection was made to his proceeding, in fact it appears from the papers that the hearings were had in the downtown branch of the court as a convenience to all parties. The magistrate, after hearing the case, held the defendants for the Special Sessions, pursuant to section 221 of the Code of Criminal Procedure, and the District Attorney proceeded by filing his information, pursuant to section 742 of that act.

It is too late now to go back to examine the regularity of the proceedings in the Magistrates' Court. The defendants appeared, evidence was taken, they were held for the Special Sessions in accordance with the law, and an information was properly filed. The Special Sessions had jurisdiction to hear and try the case, especially as these points were not raised upon the trial, not, in fact,

until over six months after the trial. In *People* v. *Dillon* (197 N. Y. 254) the defendant was discharged by the magistrate. This court held that the Special Sessions had no jurisdiction to try the case on an information filed by the District Attorney unless a magistrate had first heard the case and held the defendant for trial in that court. The District Attorney could proceed by indictment, but not by information without following the practice outlined in the Code of Criminal Procedure. Here the defendant was held in accordance with that procedure. In *People ex rel. Livingston* v. *Wyatt* (186 N. Y. 383) the action of the magistrate was immediately challenged by an application for a writ of prohibition, and this court there indicated in denying the right to the writ the remedy in a proper case.

We have considered these points raised by the defendants, although in our judgment they are not strictly before us. The proceedings before the magistrate and the Court of Special Sessions were regular upon their face and in accordance with the practice outlined in the Code of Criminal Procedure. Whatever irregularities, if any, may have existed in the preliminary steps before the magistrate as to the place of hearing and the extent of the investigation, these were waived by the defendants' acquiescence and failure to object until months after the trial.

The judgments should, therefore, be affirmed.

LEHMAN, J. (concurring in result). After a judgment of conviction has been reviewed by one appellate tribunal, further appeal to this court lies only when authorized by the provisions of section 520 of the Code of Criminal Procedure, as amended by chapter 465 of the Laws of 1926. The Legislature might have provided that the decision of the appellate tribunal upon the first appeal should be final. It has not chosen to do so. " If a judge of the court of appeals or a justice of the appellate division

of the supreme court of the department in which such conviction was had certifies that a question of law is involved which ought to be reviewed by the court of appeals, then a further appeal on such question of law may be taken to the court of appeals." So the Legislature has provided.

The purpose of this provision of the statute seems to me entirely clear. After an appellate court with power to review the facts has passed upon a judgment of conviction, no further appeal should be permitted to a court which may review only questions of law, unless an impartial judge certifies that there is in the case some question of law which should be reviewed. In that way it was hoped that useless appeals would be stopped, while the Court of Appeals might still review appeals in which important or serious questions of law were involved.

The Legislature has not seen fit to provide how or when application for such a certificate might be made. Indeed, it does not in terms require any formal application to be made. There is nothing in its language which would seem to preclude a justice of the Appellate Division which passed upon the judgment of conviction from granting a certificate of his own motion without application by appellant or notice to a respondent. There is nothing in the language of the statute which seems to preclude any judge of either court from exercising his own discretion as to when an appeal involves questions of law which should be passed upon by the Court of Appeals, though some other judge has reached the contrary view.

Doubtless the duty rests upon the judges of the State so to mould the practice governing the granting or withholding of such certificates that the legislative purpose will be effectuated. We have accordingly adopted the practice of requiring that where a defendant seeks leave to appeal, the District Attorney should, if possible, have the opportunity to present his views in opposition. So far as I know, no judge of this court or justice of the

Appellate Division has ever granted a certificate after a previous application has been denied by another judge or justice except under unusual circumstances — perhaps only where it has been made to appear that a previous denial was not intended to be on the merits.

Now, this court is about to announce a rule which will make our previous practice rigid and unalterable. Jurisdiction to grant a certificate is lacking, it is said, where a previous application has been denied. Though all the judges of the Court of Appeals and some of the justices of the Appellate Division may believe that a conviction is contrary to law and should be reversed, yet no appeal may be taken if the application for a certificate is first made to a judge who holds a contrary opinion.

I have pointed out that the statute does not in express language provide that where one judge has refused to grant an application, no other judge has jurisdiction to consider a second application. Where, then, is this limitation implied? Doubtless where one judge has denied an application, such denial should be given its due weight upon a second application. That we have all done, but as was said by the Supreme Court of the United States in regard to applications for writs of habeas corpus, " each application is to be disposed of in the exercise of a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought. Among the matters which may be considered, and even given controlling weight, are * * * a prior refusal to discharge on a like application." (*Salinger* v. *Loisel*, 265 U. S. 224.) I fail to see why the same rule should not be applied to applications for leave to appeal. In the Federal courts it is the practice to apply successively to several judges for a writ of error (Williams on Federal Practice [2d ed.], p. 765), though the language of the Federal statute is analogous to the language of section 520 of the Code of Criminal Procedure.

It is said that the decision of this court in *Carlisle* v. *Barnes* (*supra*) is authority for the rule it is now announcing. There the court was called upon to construe section 191 of the Code of Civil Procedure. It was held that by analogy to section 776 of the Code° of Civil Procedure and section 529 of the Code of Criminal Procedure, application for leave to appeal might not be renewed before the judges of this court in succession after denial by one judge.

It would be easy to point out various grounds for distinction in the difference in the language of the statute then under construction and section 520 of the Code of Criminal Procedure. Perhaps such distinctions might not be regarded as significant, except for the fact that here we are considering applications for leave to appeal from a judgment in a criminal prosecution; there the court was considering application for leave to appeal in a civil action. Applications to successive judges in civil proceedings and actions were forbidden in general terms under section 776 of the Code of Civil Procedure. Applications *ex parte* to successive judges are not generally forbidden by the Code of Criminal Procedure. Where the Legislature has thought it desirable to limit or prohibit such successive applications in regard to particular forms of relief, it has expressly so provided. (Code of Criminal Procedure §§ 349, 529, 565.) I can find no reason for implying similar restriction in other cases.

These sections refer to applications for a stay of a trial, for a certificate of reasonable doubt pending an appeal, for admission to bail. The relief asked is temporary. Denial does not affect the right of the accused to a trial or to a review by appeal. If injustice is done by refusal of the first application for relief, the effects of the injustice are limited. To permit the renewal° of an application after previous denial would in effect authorize one judge finally to overrule another judge.

In effect the rule, which this court is about to announce,

makes the finality of the decision of the first appellate court depend upon the views of a single judge. The liberty of a defendant is made dependent upon the chance of a wise choice of the first judge to whom application is made. While ordinarily it is contrary to the orderly administration of law that one judge should overrule the decision of another judge of co-ordinate powers, it seems to me contrary to all rules of fairness and even-handed justice that where an appeal is permitted upon the certificate of a judge of the Court of Appeals or a judge of the Supreme Court, an erroneous denial of a certificate by a single judge should end the jurisdiction of all the other judges to grant such a certificate. The purpose of the statutory limitation upon the right of a second appeal is to end the habit of taking trivial appeals. The retention of a right to such appeal, so limited, is in the interest not only of the defendant but of the State. I refuse to ascribe to the Legislature any intent to make that right dependent upon other matters than the justice of the cause. A judge may properly give great weight to the denial of a certificate by another judge after careful consideration, but I can find nothing in the letter or spirit of the statute which should lead us to hold that this court is without jurisdiction to pass upon questions of law which any judge or justice has certified should be reviewed by this court, though another judge may have found less substance in the questions of law involved.

CARDOZO, Ch. J., POUND, KELLOGG, O'BRIEN and HUBBS, JJ., concur with CRANE, J.; LEHMAN, J., concurs in result in separate opinion.

Judgment affirmed.